## JOSEPH CARWELL *v.* STATE OF MARYLAND

[No. 270, Initial Term, 1967.]

46

*Decided September 14, 1967.*

The cause was argued before Anderson, Morton, Orth, and Thompson, JJ., and Prettyman, J., Associate Judge of the First Judicial Circuit, specially assigned.

*Michael Lee Kaplan,* with whom was *Morris Lee Kaplan* on the brief, for appellant.

*Dickee M. Howard, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Howard Cardin, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

PER CURIAM.

On October 4, 1966, the appellant was convicted of assault upon a police officer acting in his official capacity in violation of Maryland Code, Art. 27, § 11B and of the common-law offense of resisting arrest, in the Criminal Court of Baltimore, before Judge J. Gilbert Prendergast, presiding without a jury. He was sentenced to imprisonment for a term of two years on the assault charge and one year on the charge of resisting arrest, the sentences to run concurrently.

On this appeal, the appellant contends that:

1) The trial court erred in denying a motion for judgment of acquittal.
2) The verdict was against the weight of the evidence.
3) A statement of the appellant was improperly admitted in evidence.

The appellant was also indicted, with another person, for storehouse breaking and related offenses and a motion for judgment of acquittal at the close of the evidence offered by the State was granted as to both defendants on these charges. The address of the storehouse broken into was incorrectly stated in the indictment and the lower court denied a request by the State to amend the indictment after the commencement of the trial.

There was evidence produced by the State that about 9:30 P.M. on July 10, 1966 two police officers, Robert McGlynn and George McHargue, in unmarked radio car #143 were in the vicinity of the 1300 block North Charles Street when they heard a call come over their radio for police car #501 to proceed to the unit block of West North Avenue, "two colored males breaking a window at Clayton Shop." About a minute later they heard a call for police car #104 to respond also "because they were reportedly looting the window." Thereupon McGlynn and

McHargue started toward the area and as they approached the 1800 block North Charles Street received the information that one of the males was wearing a light shirt, dark pants, with possible cuts on the hand and that he had run south on Charles Street. As they approached Trenton Alley, about 50 feet south of North Avenue on Charles Street they "observed this colored male come out of the alley, start to walk north on Charles Street, on the west side of Charles. He was wearing a light blue shirt, dark pants and he was wrapping what looked like to us a rag around his hand, had a blood soaked rag." They stopped their car, got out and walked over to him, confronting him in front of the Little Tavern at North Avenue and Charles Street. He was the appellant. Each officer identified himself as a police officer, showed the appellant the police badge each carried and placed him under arrest. He blurted out, "I didn't break the window, the other boy did it." This was not said in response to any question asked or statement made by either officer soliciting any information and was stated by the appellant immediately upon being informed he was under arrest. The officers started to walk him to their car, but the appellant "lunged" attempting to break away from them and "became very violent." They struggled with him to the west side of Charles Street and in attempting to get away the appellant bit McGlynn on the hand necessitating treatment at Mercy Hospital. The appellant struggled for four or five minutes until several uniformed policemen arrived and helped place him under control. McHargue was also injured.

Breaking a storehouse with intent to steal goods of the value of $100 or more is a felony. Code, Art. 27, § 32. Breaking a shop and stealing goods to the value of $5 or upwards is a felony. Code, Art. 27, § 33. There can be a legal arrest without a warrant for a felony when the arresting officer has reasonable grounds to believe that a felony has been committed and that the person arrested committed it. Information placed on a lookout prepared by a police organization, of which the arresting officer is a part, may constitute probable cause for the arrest. *Johnson, etc. v. State*, 238 Md. 528 and cases cited. The testimony in this case, herein detailed, clearly supports the conclusion of the court below that the arrest was legal. Ordinarily

the validity of the convictions would not be affected by whether the arrest of the appellant was or was not legal, since no evidence was seized or used against him as a result. Here, however, the appellant contends that he had a right to resist seizure by the officers inasmuch as they had no valid cause to arrest him. As the arrest of the appellant was legal, the appellant was not justified in resisting it, and assaulting the police officers. *Hawkins v. State,* 237 Md. 395; *Sharpe v. State,* 231 Md. 401; *Price v. State,* 227 Md. 28; *Kellum v. State,* 223 Md. 80.

> "For this Court to reverse a judgment entered in a case tried by the lower court without a jury, it must be shown that there was no legally sufficient evidence, or proper inferences therefrom, from which the court could find the accused guilty beyond a reasonable doubt." *Crum and Dunbar v. State,* 1 Md. App. 132, quoting *McCray v. State,* 236 Md. 9.

There was clearly sufficient evidence before the trial court, as herein summarized, from which the court could find the appellant guilty of the crimes for which he was charged beyond a reasonable doubt. The findings of the trial judge will not be disturbed unless clearly erroneous. Maryland Rule, 1086; *Anglin v. State,* 1 Md. App. 85. We find no error in the denial of the motion for judgment of acquittal and hold that there was legally sufficient evidence to sustain the convictions. The appellant denied on the stand that the police officers made their identity known to him. In explanation of why he ran when the police "grabbed" him, he said that he had been fighting with the co-defendant. He admitted resisting arrest but felt "the police didn't have no right to approach me in this kind of way." He stated that he could have bit the officer but did not remember doing so. He said that he had been at Spring Grove about four or five weeks "for barbituates" and on the night he was arrested he did not "have too much to drink" but "had about five or six barbituates." He had been convicted on a previous occasion of larceny, resisting arrest and assault. Since one of the functions of the lower court is to determine the credibility of the witnesses, it may, in judging credibility, disbelieve exculpa-

tory statements made by the defendant. *Bird v. State,* 231 Md. 432; Maryland Rule, 1086.

The appellant also argues that the "decision of the lower court was against the weight of the evidence." In *O'Brien v. State,* 1 Md. App. 94 at 97, we quoted *Graczyk v. State,* 233 Md. 245:

> "This Court has repeatedly stated that our function in reviewing the sufficiency of the evidence on an appeal from a conviction in a non-jury criminal case is not whether we might have reached a different result from that of the trial court, but whether the court below had sufficient evidence from which it could be fairly convinced beyond a reasonable doubt of the defendant's guilt of the offense charged."

Thus, the weight of the evidence is a question for the trial court. *Graef v. State,* 1 Md. App. 161.

The appellant also contends that the testimony that he said, immediately upon being informed that he was under arrest, "I didn't break the window, the other boy did it," was inadmissible because the police did not employ the procedural safeguards set forth in *Miranda v. Arizona,* 384 U. S. 436. We held in *Gaudio and Bucci v. State,* 1 Md. App. 455 that those safeguards applied to statements made during a "custodial interrogation" and that *Miranda* did not protect an accused "under any and all circumstances * * * to the extent that no inquiry at all by the authorities is permissible without prior warning." In the instant case there was not even an inquiry by the police; the appellant simply "blurted out" the statement to which objection was made. As in *Gaudio,* the appellant here was "not held incommunicado in an isolated setting in the privacy of an interrogation room in a police station" nor was he "swept from familiar surroundings into police custody," and "subjected to the techniques of persuasion." He was standing on a public street and volunteered the information upon being told he was under arrest. We note that the Court said in *Miranda* that "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our hold-

ing today." We do not believe that *Miranda* compels that the statement here objected to be held inadmissible and hold that there was no error in admitting it.

*Judgments affirmed.*