# EARL HENRY SPEARS *v.* STATE OF MARYLAND

[No. 689, September Term, 1977.]

*Decided February 14, 1978.*

The cause was argued before MELVIN, WILNER and COUCH, JJ.

*Arnold M. Zerwitz, Assigned Public Defender*, for appellant.

*Alexander L. Cummings, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, Warren B. Duckett, Jr., State's Attorney for Anne Arundel County*, and *James Gibbons, Assistant State's Attorney for Anne Arundel County*, on the brief, for appellee.

COUCH, J., delivered the opinion of the Court.

Appellant, Earl Henry Spears, was convicted of automobile larceny, possession of an automobile with an altered serial number, and malicious destruction of property following a court trial in the Circuit Court for Anne Arundel County (Childs, J.); he was subsequently sentenced to a term of two years for the larceny, and one year each for the other two offenses, to be served consecutively. From these judgments he appeals, raising two issues for our review:

> 1. Whether the trial judge erred by failing to rule on a motion to suppress before the close of the case?
>
> 2. Whether the evidence presented was sufficient for conviction of automobile larceny, possession of an automobile with an altered serial number, and malicious destruction of property?

One Judith Stockton owned a 1967 Pontiac G.T.O., maroon in color. On July 1, 1976 she reported to the police the theft of her car from in front of her residence in Rockville, Maryland. The next day appellant was involved in a collision

with an Anne Arundel County police cruiser while being chased by a second Anne Arundel County police officer, Officer Bearden; this officer had been notified by radio that appellant had been involved in a chase in Prince George's County and had eluded those officers after a lengthy high-speed chase. Officer Bearden testified appellant drove at a high rate of speed, committed numerous traffic violations, drove on the wrong side of the road and passed people on the right. The chase ended when the collision occurred, which took place in the Odenton area of Anne Arundel County. Due to the collision appellant was rendered unconscious and was taken to the University Hospital in Baltimore. Before being removed, however, it appears that an automobile registration card was taken from his person which showed a registration number identical to that found on the car's door post; the car itself was identified on the registration card as a 1967 Pontiac G.T.O., maroon in color. The car was towed to a garage and inspected; it showed damage to the front. The police officer noticed that the serial number plate on the door post was affixed with rivets which were round in shape. Because of his training in auto theft matters he had learned that serial number identification plates are normally attached by rosette rivets, which are octagonal in shape. Suspicions aroused, he called in Officer Standiford, a detective with the Auto Theft Squad of the Anne Arundel County Police Department. This officer was allowed to testify, over objection, that he was able to find a confidential identification number on the frame of the car by crawling under the car and scraping dirt off a particular area of the frame. Having obtained this number, which did not match the serial number on the door post, through the police computer he determined that this car was the car reported stolen by Judith Stockton.

Judith Stockton identified the maroon G.T.O. as hers in four ways: by an afghan which she had left in her car and which was still on the rear seat, by scrape marks on the right side tires caused by her habit of rubbing curbs, by the front wheels which she had purchased specially, and by the paint job on the car.

Appellant testified he had purchased the car from his brother some two weeks before the incident, and had installed certain radio equipment in it and rear wheels of an unusual nature. The rear wheels and the radio equipment were on the car when the car was recovered by the police. Finally, appellant's sister testified she witnessed the sale as described by appellant.

1

During the course of the trial appellant moved to suppress any evidence obtained by Officer Standiford stemming from his discovery of the confidential number on the basis that it was a warrantless search in violation of appellant's Fourth Amendment rights. The trial court overruled this motion initially, then, after argument, the court held the matter under consideration. At the close of the State's case appellant moved for a judgment of acquittal and renewed his motion to suppress. The court merely said "Motion denied", without stating whether his ruling applied to the entire matter or merely the motion for judgment of acquittal. After the defense had put on its case, and after rebuttal by the State, appellant renewed his motion for judgment of acquittal and argued that Officer Standiford's testimony regarding the confidential number should be suppressed and, if this was done, then the evidence was insufficient to support conviction. Following a colloquy between the court and counsel, the court stated:

> "This Court finds, disregarding Officer Standiford's testimony concerning what he did about lifting the secret serial number from the left frame of this car, that there is sufficient evidence to prove beyond a reasonable doubt and to a moral certainty the guilt of the accused. We have, in the first place, Mrs. Stockton's testimony that she owned, and she proved through documentary evidence from the Department of Motor Vehicles, that she was on June 30th the owner of a maroon Pontiac GTO. That she parked it outside of her apartment that evening and that she did not give anyone permission to use the

car. At the time the car was parked it had the letters on the front tire, front left tire scuffed so that they were no longer raised, as was the case when they were new, and she also had a distinctive afghan belonging to her grandmother in the back seat."

\* \* \*

"We then have the situation wherein Mrs. Stockton testified, saying that when the car was returned to her she not only identified it from its general appearance but also on looking in the window she could see her grandmother's afghan which was multicolored and on the back seat of the car, and that she further recognized the car by the fact that the raised letters were scuffed from the front left tire when it was returned to her."

Appellant argues here that he was entitled to a ruling on his motion to suppress, citing *Brice v. State*, 254 Md. 655, 255 A. 2d 28 (1969), and *Davis v. State*, 189 Md. 269, 55 A. 2d 702 (1947), and that the failure of the trial court to make a ruling constitutes reversible error. We have no quarrel with this as an abstract proposition, but find no error in the instant case because we think the trial court did, in effect, grant appellant's motion. Certainly the above quoted part of the trial court's opinion clearly shows he totally disregarded the evidence to which appellant objected, in ruling on the motions for judgment of acquittal and his ultimate finding of guilt. Keeping in mind that this was a court trial, we believe that what Judge Finan, speaking for the Court in *State v. Hutchinson*, 260 Md. 227, 233, 271 A. 2d 641, 644 (1970), said is apposite here:

"This assumption of the court might be valid were we to first, not believe the trial judge's statement that he was disregarding and eliminating from his deliberations the substance of the inadmissible confession, and secondly, choose to ignore the professional expertise, experience, and judicial temperament with which our legal system has

inherently invested a trial judge *vis a vis* a jury comprised of laymen. It is true that judges, being flesh and blood, are subject to the same emotions and human frailties as affect other members of the specie; however, by his legal training, traditional approach to problems, and the very state of the art of his profession, he must early learn to perceive, distinguish and interpret the nuances of the law which are its 'warp and woof.' "

Accordingly, we find no merit to this contention.

## 2

Appellant's next contention, simply stated, is that the evidence before the court was insufficient to convict him for any offenses of which he was convicted. We agree as to the conviction for malicious destruction but disagree as to the convictions for larceny and possession of an automobile with removed serial number.

We have said in the past that our function in reviewing the sufficiency of the evidence on appeal from a conviction in a non-jury criminal case, is not whether we might reach a different result from that of the trial court, but whether that court had sufficient evidence before it from which it could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged. *See Carwell v. State*, 2 Md. App. 45, 232 A. 2d 903 (1967), and *Melia and Shelhorse v. State*, 5 Md. App. 354, 247 A. 2d 554 (1968).

Keeping this standard of review in mind, our review of the record leads us to find that there was sufficient evidence to sustain appellant's conviction for automobile larceny and possession of an automobile with removed serial number, but not for the malicious destruction offense.

### (a) Larceny of automobile

Both sides here agree that an essential element to be proved in a larceny case is the proof of ownership of the property in another. Appellant maintains that without the testimony of Officer Standiford, there is insufficient evidence

to show ownership of the Pontiac G.T.O. in Judith Stockton. We disagree. The court had the Stockton testimony before it, as set out above, that identified the vehicle personally to her. This is sufficient to support the court's finding as to Stockton's ownership.

### (b) Possession of an automobile
### with an altered serial number

Appellant also contends that there was insufficient evidence to support his conviction for possession of an article with the serial number removed, because the State failed to prove that the serial number had been removed, and that his possession of a car with the serial number removed was knowing. This statutory offense requires for conviction not only the possession of a manufactured product on which the serial number has been "removed, defaced or obliterated" but the possession must be "knowing".[1]

To support a finding that the serial number on the G.T.O. had been "removed, defaced or obliterated" the record shows the positive identification by Judith Stockton that the car was hers, Stockton's bill of sale and Maryland registration for her car that had been stolen, and Officer Bearden's testimony as to the serial number that appeared on the door post. Accordingly, there is a rational inference that the car, identified to Stockton, at one time bore a serial number different from the serial number it bore at the time of appellant's arrest. The finding of the court below that the serial number had been removed is clearly supported by the evidence.

Likewise, the court could have found that appellant's possession of the car with its serial number removed was knowing. Officer Bearden testified to the high-speed chase of appellant, in which appellant strenuously attempted to elude the police.

---

1. Annotated Code of Maryland, Art. 27, § 389 (b):
   *"Possession of article from which number removed, etc.* — It shall be unlawful for any person knowingly to retain in his possession or to offer for sale any manufactured article or product from which the manufacturer's serial number has been so removed, defaced or obliterated."

This Court, in *McLean v. State*, 6 Md. App. 366, 251 A. 2d 252 (1969), quoted with approval the general statement from Wigmore, *Evidence*, § 276 (3d ed. 1940), as follows:

> "Flight from justice, and its analogous conduct, have always been deemed indicative of a consciousness of guilt. * * * It is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself."

The record supports a rational inference that appellant's flight was a result of his knowledge that the car was stolen and the serial number removed, and that if he was arrested the larceny and removal of the serial number would become known. We find sufficient evidence and rational inferences to be drawn were present to have allowed the trial court to find appellant did knowingly have possession of a product from which the manufacturer's serial number had been removed.

### (c) Malicious destruction of property

Finally appellant contends the evidence was insufficient to sustain a conviction for malicious destruction of property. We agree.

Md. Code (1957) (1976 Repl. Vol.) Art. 27, § 111, provides "Any person who shall wilfully and maliciously destroy, injure, deface or molest any real or personal property of another shall be deemed guilty of a misdemeanor . . . ." The elements of the offense under the statute are:

(1) the property may be real or personal but must be that of another;
(2) the property must be destroyed, injured, defaced or molested;
(3) the mischief must be wilful and malicious.

There can be no argument that in the instant case the property was personal and was at least injured. We have

previously concluded that the evidence was sufficient for the trial court to find that the property was that of another (Judith Stockton). Consequently, the only remaining element of the offense to be considered is the mens rea; was there sufficient evidence to find that the mischief was wilful and malicious? This Court, speaking through Judge Orth (now Associate Judge of the Court of Appeals), in *Duncan v. State*, 5 Md. App. 440, 445, 248 A. 2d 176, 179 (1968), stated:

> "We think that the special element of mens-rea in malicious mischief, designated in the statute as 'wilfully and maliciously,' requires either a specific intent to cause the destruction, injury, defacement or molestation of the property of another, or an act done in wanton and wilful disregard of the plain and strong likelihood of such harm, without any justification, excuse, or substantial mitigation."

We do not find evidence of a specific intent to cause damage to the Stockton automobile, nor do we find evidence to support justification, excuse, or mitigation. Thus we must look to the record to determine if the damage was caused through wanton and wilful disregard of the plain and strong likelihood of such damage. We find the evidence deficient here, requiring us to conclude that the trial court's finding was clearly erroneous. Maryland Rule 1086.[2] The record is completely silent as to the circumstances surrounding the collision of the Stockton automobile and the Anne Arundel County police car. The operator of that vehicle was not called as a witness. Officer Bearden, the officer who chased the appellant, did not witness the collision. Appellant himself shed no light on the happening of the collision. All the trial court had before it was Bearden's testimony that appellant drove at a high rate of speed, on the wrong side of the road on occasion, and passed some people on the right (which may

---

2. "When an action has been tried by the lower court without a jury, this Court will review the case upon both the law and the evidence, but the judgment of the lower court will not be set aside on the evidence unless clearly erroneous and due regard will be given to the opportunity of the lower court to judge the credibility of the witnesses."

or may not have been impermissible). We think this falls short of showing that the damage was caused by appellant's wilful and wanton disregard of the plain and strong likelihood of such damage. There may have been many reasons for the collision, which were not necessarily the fault of appellant.

We hold the trial court's finding of guilt here was clearly erroneous and vacate this judgment.

> *Judgments affirmed on larceny conviction (1st count) and on possession of vehicle with serial number removed (5th count).*
> *Judgment vacated on malicious destruction conviction (6th count).*
> *Costs to be paid by appellant.*